**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Tipa,<br><br>Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-13-08293-PCT-DGC<br><br>**ORDER** |

Plaintiff Valerie Tipa seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background.**

On April 13, 2010, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning April 4, 2008. On June 29, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert ("VE") also testified. On July 24, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant

has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013, and that she has not engaged in substantial gainful activity since April 4, 2008. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar back pain/degenerative disc disease status-post fusion surgery, obesity, and degenerative joint disease of the right hip. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [S]edentary work as defined in 20 CFR 404.1567(a) with no climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, crouching, kneeling, crawling, climbing ramps and stairs; and no concentrated exposure to excessive vibrations, moving machinery except motor vehicles, or unprotected heights.

The ALJ further found that Plaintiff is able to perform her past relevant work as a receptionist. At step five, the ALJ concluded that considering Plaintiff's age, education,

work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV. Analysis.**

Plaintiff argues that the ALJ "misconstrued" practically all of the relevant objective medical evidence and all of the subjective testimony. Plaintiff's generalized arguments appear to boil down to an assertion that the ALJ's decision is defective for three reasons: (1) the ALJ improperly weighed the opinions of Plaintiff's treating physician and a consultative examiner; (2) the ALJ improperly evaluated Plaintiff's credibility; and (3) the ALJ improperly determined that Plaintiff could perform her past relevant work. Plaintiff also argues that this matter should be assigned to a different ALJ if a remand is necessary because the ALJ assigned to her case is prejudiced against her. The Court will address each argument below.

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: treating physician Katherine Metzger, D.O., and consultative examiner Mark Brecheisen, D.O. The Court will address the ALJ's treatment of each opinion below.

**1. Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*,

- 4 -

81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Katherine Metzger, D.O.

Dr. Metzger completed a check-the-box form on May 21, 2012 offering the following opinions: Plaintiff could occasionally lift or carry ten pounds and could frequently lift or carry five pounds; Plaintiff could stand and/or walk four hours in a work day with the use of a cane; Plaintiff needs to alternate standing and sitting to avoid stiffening and pain; Plaintiff needs to elevate her legs two to three times per day because of swelling; Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl; Plaintiff had no restrictions as to heights, noise, temperature extremes, chemicals, or dust; and Plaintiff should not be around moving machinery. A.R. 383-85. The ALJ accorded Dr. Metzger's opinion "partial weight." A.R. 17.

Dr. Metzger's medical opinion was contradicted by the opinion of Dr. Brecheisen, who opined that Plaintiff had greater abilities than those identified by Dr. Metzger. The ALJ could therefore discount Dr. Metzger's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. The ALJ provided four reasons for according Dr. Metzger's opinion partial weight.

First, the ALJ noted that Dr. Metzger's opinion assessed limitations from "5/8/12 to present" and not from Plaintiff's alleged onset date. A.R. 17, 385. Dr. Metzger's opinion failed to meet the duration requirement because the assessed impairments had not lasted for a continuous period of at least 12 months and Dr. Metzger's opinion does not state that Plaintiff's limitations are expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

Second, the ALJ concluded that Dr. Metzger's opinion was inconsistent with her own treatment notes. A.R. 17. The treatment notes included reports of "unremarkable examinations including no acute distress, ambulation without assistance, no neurological abnormalities, a normal range of motion in all areas, an unremarkable back including none-to-slight tenderness, and no edema." A.R. 15, 377-85. The mild impairments supported by Dr. Metzger's treatment notes are not consistent with the severe restrictions contained in her medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between questionnaire responses and medical records provides a legitimate reason for discounting opinion).

Third, the ALJ found that the brevity of Dr. Metzger's treating relationship with Plaintiff strongly suggested that the limitations included in Dr. Metzger's opinion were "regurgitations of the claimant's self-report." A.R. 17. By the time Dr. Metzger filled out her check-the-box form, the treating relationship had lasted less than one month and Dr. Metzger had seen Plaintiff only one time. A.R. 381-85. The ALJ properly relied on the short duration of the treatment relationship to discount Dr. Metzger's opinion. *Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (finding the duration of the treatment relationship and the frequency and nature of the contact relevant in weighing medical opinion evidence). The ALJ's decision to discount Dr. Metzger's opinion is buttressed by Dr. Metzger's notation in her treatment notes that she "filled out the form for [Plaintiff's] lawyers" with Plaintiff's help. A.R. 379; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (stating that the ALJ could discount a treating physician's opinion because it was "based on [the claimant]'s subjective

descriptions of pain."); *Benton*, 331 F.3d at 1038-39. The mild limitations and unremarkable findings made by Dr. Metzger further support the ALJ's belief that Dr. Metzger's medical opinion was based on Plaintiff's self-report rather than on Dr. Metzger's medical observations. A.R. 377-85.

Fourth, the ALJ asserted that Dr. Metzger's opinion was inconsistent with reliable medical evidence of record. The ALJ based this assertion on two sources: (1) physical examinations performed by Dr. Metzger herself and described above, and (2) physical therapy records submitted by a therapist from whom Plaintiff received treatment following her surgery. A.R. 265-88. The physical therapy records include multiple clinical tests establishing Plaintiff's range of motion, strength, reflexes, gait, mobility, and recuperation. The records also include multiple statements made and documents submitted by Plaintiff indicating that her pain had significantly abated, she relied less on her cane, she no longer wore her back brace, she could satisfactorily perform all of her tasks of daily living, and her mobility had improved. A.R. 266-67, 71-72. The records even contain a statement by Plaintiff asserting that she felt ready to return to work in an office position so long as she did not have to lift more than 20 pounds. A.R. 267, 272. *See Orn*, 495 F.3d 631 (explaining that consistency with the medical record as a whole is a relevant factor when evaluating a medical opinion).

Plaintiff argues that it was error for the ALJ to rely on records submitted by the physical therapist because the therapist is not an acceptable medical source as defined by Social Security Rulings. Doc. 13 at 8; SSR 06-03p. Plaintiff is incorrect. Although the therapist is not an "acceptable medical source" as defined by Ruling 06-03p, the ruling clearly indicates that the therapist is an "other source" from whom the ALJ may gather evidence that sheds light on the severity of Plaintiff's impairments and how the impairments affect Plaintiff's ability to function. Thus, the ALJ could rely on the physical therapist's records to discount Dr. Metzger's medical opinion. SSR 06-03p.

The ALJ relied on specific, legitimate, and permissible reasons to discount Dr. Metzger's opinion, and those reasons are supported by substantial evidence. The Court concludes that the ALJ did not commit legal error.

### 3. Mark Brecheisen, D.O.

Plaintiff argues that the ALJ mischaracterized the report submitted by consultative examiner Mark Brecheisen, D.O., by stating that he opined that Plaintiff was capable of a sedentary lifting level of "no more than 10 pounds," when Dr. Brecheisen actually found that Plaintiff was capable of "less than 10 pounds both occasionally and frequently." Doc. 13 at 9-10. Plaintiff is correct that these two standards are different and that the ALJ incorrectly summarized Dr. Brecheisen's finding. But this error had no impact on the ALJ's ultimate decision because the ALJ discounted Dr. Brecheisen's lifting requirement, noting that it was based on Plaintiff's self-report. A.R. 16; *Batson*, 359 F.3d at 1195. The Court concludes, therefore, that the ALJ did not commit legal error.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so, and if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ complied with this two-step analysis. The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

At the hearing Plaintiff testified the she has not worked since April 2008, when she "herniated [her] back." A.R. 33. Plaintiff stated that she uses a cane to walk at all times. A.R. 33-34. She asserted that she needs to recline and shift her weight when sitting and alternate between sitting and standing in order to alleviate her pain. A.R. 34, 36. She testified the she experiences "excruciating" pain in her back and right hip that has worsened since her October 2008 back surgery and which is not alleviated with pain medication. A.R. 38, 41. Plaintiff testified that she experiences intensely painful muscle spasms in her legs a few times a day that prevent her from driving and require two hours or so of recovery time. A.R. 40-41. Plaintiff asserted that she has endured migraines three times a week since 2008, which last twelve hours and require her to "go to a dark room, put ice on [her] head, turn off the lights, [and hear] no sound." A.R. 42-43. The only medication she has taken to combat her migraines is Tylenol. A.R. 43. She testified that her right kneecap pops out of place several times a week, requiring her to "push[] it back in." A.R. 43-44. She stated that she can lift "maybe ten pounds." A.R. 44. She asserted that she has trouble concentrating, which causes her to randomly forget what she was talking about or doing several times per day. A.R. 45. As to activities of daily living, Plaintiff testified that her disabled, quadriplegic husband does most of the housework and that she remains in her bed some days because of her pain. A.R. 45-46. At the hearing, Plaintiff's attorney brought attention to the fact that Plaintiff elevated her legs on a second chair while she was testifying, used a cane, brought a "grabber" to the hearing in order to demonstrate that she could not stoop, and alternated between standing and sitting during her testimony.

The ALJ gave the following reasons for finding Plaintiff's testimony not fully credible: (1) the objective medical evidence did not support Plaintiff's allegations of total disability; (2) Plaintiff's testimony was inconsistent with statements made to healthcare providers immediately after her surgery; (3) Plaintiff's testimony about the intensity of her back and hip pain is not consistent with her failure to seek treatment for nearly two and a half years; (4) once Plaintiff did seek care for her pain, she received conservative

treatment and over-the-counter medication only; (5) Plaintiff's activities of daily living were inconsistent with her allegations of pain; (6) the record contains several inconsistent statements from Plaintiff regarding both her degree of limitations and other matters indirectly related to her functioning and overall credibility; and (7) Plaintiff's hearing testimony was exaggerated. A.R. 15-16. After carefully reviewing the record, the Court finds that each of the reasons cited by the ALJ for finding Plaintiff's testimony not fully credible is supported by substantial evidence in the record.

Plaintiff argues that the ALJ's assertion that her condition improved post-surgery is baseless. Doc. 13 at 10, 15-16. To the contrary, multiple relevant sources indicate that Plaintiff's mobility and level of pain improved over time after her surgery, including her physical therapist (A.R. 266-87) and a radiologist who found "less prominent" disc bulges and a decrease in right-sided narrowing when comparing an April 2012 MRI of Plaintiff's back to a March 2008 MRI (A.R. 374). Substantial evidence therefore supported that ALJ's assertion that Plaintiff's condition improved over time.

Plaintiff contends that the ALJ erred in finding her less credible based on the assertion that Plaintiff collected unemployment benefits after the alleged onset of her disability. Doc. 13 at 11. Plaintiff correctly observes that she failed to collect unemployment benefits during the relevant time period. A.R. 204-05. In addition, while there may be an inconsistency between Plaintiff's decision to file for unemployment benefits, which requires an attestation of Plaintiff's ability to work, and her decision to file for disability benefits, which requires an attestation of Plaintiff's inability to work, the record here does not establish whether Plaintiff held herself out as available for full-time or part-time work. Only the former is inconsistent with her disability allegations. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Therefore, the ALJ's reliance on this potential inconsistency in discounting Plaintiff's credibility was error. Because the ALJ provided many other reasons for discounting Plaintiff's credibility, however, the Court concludes that the error was harmless.

Plaintiff asserts that the ALJ erred in finding that she only takes "over-the-counter pain medication." Doc. 13 at 16. Plaintiff bases this assertion on the fact that she also takes multiple prescription medications, including Tramadol, Gabapentin, and Ropinirole. A.R. 245. While it is true that Plaintiff was prescribed these medications approximately three months prior to her hearing before the ALJ, throughout the majority of the relevant time period Plaintiff only reported taking over-the-counter medications for her pain. A.R. 226, 244, 245, 311, 349-50. Thus, while the ALJ's statement is not entirely correct, it accurately captures the fact that Plaintiff medicated her "excruciating pain" with Tylenol and other over-the-counter pain medications until just before her administrative hearing.

Plaintiff contends that the ALJ erred by finding that Plaintiff used a cane that was not prescribed or medically necessary. Doc. 13 at 8-9. Plaintiff asserts that both Drs. Metzger and Brecheisen testified that the cane was prescribed and medically necessary. *Id.* Plaintiff is correct. A.R. 312, 384. This error, which eliminates the ALJ's conclusion that Plaintiff used a cane that was not prescribed, does not render the ALJ's other findings legally erroneous.

Plaintiff contends that it was error for the ALJ to discount her testimony based on contradictory evidence of her activities of daily living. Doc. 13 at 14. Plaintiff bases her contention on the existence of evidence in the record that tends to support her testimony regarding her activities of daily living. Plaintiff similarly contests the ALJ's conclusions that Plaintiff engaged in physical exercise and that she made inconsistent statements regarding marijuana use during the administrative process because other evidence exists in the record supporting an alternate interpretation of the record. The Court may not, however, re-weigh the evidence. "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. The Court will not second-guess the ALJ's conclusions because they are supported by substantial evidence.

### C. ALJ's Determination the Plaintiff Could Perform Past Relevant Work.

Plaintiff argues that it was error for the ALJ to conclude that she was capable of performing her past work as a receptionist. Doc. 13 at 16-17. Plaintiff asserts that the ALJ stated that her former occupation as a receptionist was found in the Dictionary of Occupational Titles ("DOT") number 237.367-010 with a sedentary exertion level and skill level of three, when it is actually found under DOT number 237.367-038 with a sedentary level and skill level of four. *Id*. Plaintiff is simply incorrect. The transcript from the hearing makes clear that the relevant occupation is listed under DOT number 237.267-010 with a sedentary exertion and skill level of three. A.R. 56.

Plaintiff also asserts that the ALJ ignored certain testimony from the vocational expert. Doc. 13 at 17. The vocational expert testimony that the ALJ ignored, however, was responding to a hypothetical posed by Plaintiff's attorney and was based on an RFC not adopted by the ALJ. The ALJ, therefore, properly disregarded the testimony.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 11th day of September, 2014.

_____
David G. Campbell
United States District Judge